**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**UNITED STATES OF AMERICA**                                    **PLAINTIFF**

**SHEANDA BRYANT, ET. AL.**                        **PLAINTIFF-INTERVENORS**

**VS.**                                    **CIVIL ACTION NO.: 2: 67-CV-02216**

**LAWRENCE COUNTY SCHOOL DISTRICT**                                    **DEFENDANT**

---

**MEMORANDUM BRIEF IN SUPPORT OF MOTION TO MODIFY DESEGREGATION
PLAN AND TO GRANT EXPEDITED CONSIDERATION OF CONSOLIDATION
OF CITED SCHOOLS**

---

COMES NOW, the Defendant, the Lawrence County School District (hereinafter "LCSD" or "District"), by and through its counsel of record, and files this Memorandum in Support of its Motion to Modify Desegregation Plan and to Grant Expedited Consideration of Consolidation of Cited Schools, and would show unto this Honorable Court as follows:

## I.    CASE HISTORY AND JURISDICTION

On November 7, 1969, the Fifth Circuit Court of Appeals (hereinafter "Fifth Circuit") in consolidated Causes Nos. 28030 and 28042 on the docket of that Court, involving thirty (30) school systems in the Southern District of Mississippi, directed the immediate enforcement, by most of the respective school boards, of permanent student and faculty assignment plans, prepared by the Office of Education, Department of Health, Education and Welfare (hereinafter "HEW plan") in order to effectuate the conversion of these schools systems to unitary systems. *United*

*States v. Hinds County School Board,* 433 F. 2d 611, 612 (5th Cir. 1970).[1] The Fifth Circuit maintained jurisdiction for the purposes of modifying or amending its order of November 7, 1969, and further provided a procedure whereby the plans, as adopted could be modified by the filing of suggested modifications with this District Court, not before March 1, 1970, with the suggested modifications having an effective date of September 1970. *Id* at 612.

Pursuant to the terms of the order of the U.S. Supreme Court in *Alexander v. Holmes County Board of Education,* the Court of Appeals may direct the schools involved to accept all or any part of the August 11, 1969, recommendations within the HEW plan, with any modifications which the Court of Appeals deems proper insofar as those recommendations insure a totally unitary schools system for all eligible pupils without regard to race or color. […] No amendment shall become effective before being passed upon by the Court of Appeals. *Alexander v. Holmes County Board of Education,* 396 U.S. 19, *21 (1969).

Also pursuant to the terms of the order of the U.S. Supreme Court in *Alexander v. Holmes County Board of Education*, no amendment or modification to any plan shall become effective without the order of this court.   Fifth Circuit per curium, dated November 7, 1969, is attached as Supplement "A", Bates #: 000129-000138; cited language is found at Bates #: 000137, unnumbered ¶ 2.

On or about November 26, 1969, the Fifth Circuit directed the enforcement of the HEW plan and approved certain modifications thereto. *United States of America, vs. Lawrence County School District, No. 2216, Order, December 5, 1969.* Said Order is attached hereto as Supplement "B", Bates #: 000139-000141.

---

[1]     The Lawrence County School District does not have a copy of this ruling other than its verbatim adoption as Appendix "A" in *United States v. Hinds County School Board,* 433 F. 2d 611 (5th Cir. 1970). Therefore, the herein citations to *United States v. Lawrence County School District, No. 2216(H)* are to the *Hinds County* case citation.

On May 18, 1970, upon a motion to the Fifth Circuit by the N.A.A.C.P. Legal and Educational Defense Fund, Inc., for supplemental relief (filed on January 7, 1970) charging the Appellate Court had departed from its own order of November 7, 1969, in amending the HEW plan in its order of November 26, 1969, and, by way of relief, moving that the amended plan be tested in an evidentiary hearing before the Fifth Circuit, the Fifth Circuit responded by, among other things, ordering an evidentiary hearing before this Court on April 20, 1970.  *Hinds County School Board*, 433 F. 2d 611, 612-613.

On May 18, 1970, this court modified the original HEW plan due to the original plan being "[…] unrealistic and impractical from the standpoint of both educational values and administrative workability […] [.]" *Hinds County School Board*, 433 F. 2d 611, 617.

On or about August 7, 1970, the Fifth Circuit adopted this Court's May 18, 1970, Findings and Recommendations and made it the opinion of this court.[2]  Among  other things, the Order required the [LCSD] to consult with the bi-racial committee.[3]

On or about July 18, 1972, the Fifth Circuit entered an Order Closing the Case as an active case subject to being reopened upon proper application by any party, of on the Court's own motion.[4]

On or about January 9, 1974, the Fifth Circuit transferred jurisdiction of the herein matter to this honorable district court to be placed on the inactive docket subject to being reopened for good cause.[5]

---

[2] Southern District Court of Mississippi Docket notation at 10.
[3] The LCSD does not have a copy of the August 7, 1970, Fifth Circuit Order.
[4] Southern District Court of Mississippi Docket notation at 11
[5] *Id* at 11.

On or about November 11, 1974, the Fifth Circuit transferred jurisdiction of the case to this Court including, among other things, the aforesaid orders entered by the Fifth Circuit which shall be considered as the mandate of [that] court and are to be made the order of the district court.[6]

On or about November 27, 1984, this Court denied the Plaintiff-Intervenor's motion for preliminary injunction to enjoin the therein proposed construction and renovation pending a trial on the merits of their claims of discrimination.  *United States v. Lawrence County School Dist.,* 606 F. Supp. 820, 821 (S.D. Miss, 1984).

On or about August 19, 1985, on appeal, the Fifth Circuit affirmed the district court's November 27, 1984, denial of the preliminary injunction.[7],[8]

On or about October 16, 1985, this Court granted the Plaintiff-Intervenor's motion for a temporary restraining order, enjoining the defendants, their agents, and their employees from further execution of construction contracts.[9]  On or about October 23, 1985, the Temporary restraining order was extended.[10]  On or about November 4, 1985, the defendants were enjoined from further execution of contracts for the construction of Monticello Elementary School.[11]

On or about January 10, 1986, this Court issued a Memorandum Opinion declaring, among other things, the LCSD's school construction plans satisfy the constitutional obligations.  *United States v. Lawrence County Sch. Dist.,* 626 F. Supp. 940, 945-947 (S.D. Miss, 1986).  In that opinion, this Court wrote, in-part, "The court is of the opinion that the site chosen [the current

---

[6] *Id.*

[7]         Despite recently obtaining the entire Circuit court file from the Fort Worth, TX Archives, the LCSD does not have a copy, and has been unable to obtain a copy thereof from any source, the August 19, 1985, Order.  A request for court files from the Atlanta Archives has been made but, due to COVID causing the staff to work from home, receipt of those files continues to be delayed.

[8] *Id* at 18.

[9] *Id* at 19.

[10] *Id* at 19.

[11] *Id* at 20.

Monticello Elementary School site], for the reasons stated above, will not be a factor tending to resegregate the Lawrence County schools.  Furthermore, because the new facility will replace a building which was, prior to 1969, a white school, it will serve to promote the desegregative purpose in providing a facility which has no ties to a particular race." *Lawrence County Sch. Dist.,* 626 F. Supp. at 946.

On or about September 15, 1986, the Fifth Circuit affirmed this Court's January 1986 Memorandum opinion that denied the relief sought by intervenors as it related to the consolidation of all Lawrence County Schools to a location within Monticello and stated that doing so, "[…] goes beyond what is now required to accomplish desegregation."  *United States v. Lawrence County School Dist.*, 799 F. 2d 1031, 1048 (5th Cir. 1986) (Note: other parts of this court's January 1986 opinion were overturned).

On August 12, 1987, an Agreed Order was entered by this Court amending the district's previous school location plan and student attendance areas, including, but not limited to, closing Beulah Williams Elementary School and the reassignment of those students.

The LCSD remains under federal oversight.

## II.    SUMMARY OF INSTANT FACTS AND ISSUES

Rod Paige Middle School (formerly Monticello Junior High and McCullough Junior High, in the Court's record) (hereinafter "RPMS") was built approximately seventy (70) or so years ago. Incidentally, the exact date of construction is not listed on the tax records. Rod Paige Middle School property information is attached as Exhibit "B", incorporated herein by reference, and labelled Bates #: 000036-000038.

For many years, Rod Paige has been in decline, structurally and mechanically.  However, during the previous school year, the structural integrity of what is known as the 5th and 6th grade

wing has deteriorated to the point that several of the classrooms are no longer usable and are downright unsafe; the entire wing, informally known as the 6th grade wing, is blocked off from use due to partial collapse concerns.

Further, the building's electrical system is obsolete and, thus, needed components are no longer available due to the age of the equipment.  Additionally, there are significant issues with mold, due to water seepage through the building's walls, to name a few major issues.  A presentation of some of the major issues at RPMS is attached hereto as Exhibit "A."

While the conditions at RPMS have been a concern for many years, and while the LCSD has done its best to refurbish, update/upgrade, and maintain RPMS, the herein cited issues have necessitated a partial closure of the RPMS facility, forcing the LCSD to shift students to other areas of the facility, thereby stressing the capacity thereof (even without considering COVID concerns but particularly when considering COVID social distancing best practices).  As such, it is now, simply, imperative the LCSD take steps to once and for all cure these significant issues.

Due to a change in state law, in or around July 2019, the Lawrence County School District appointed a Superintendent of Education (Dr. Titus M. Hines, Ed. D. (Note: prior to this, Superintendents were elected officials) (hereinafter "Dr. Hines")).  Dr. Hines' did not officially begin his duties until January 2020.  However, almost immediately upon Dr. Hines beginning his said duties, he and his administration, and the School Board made it a priority to address the issues at RPMS and to begin the process to determine the best course of action for mitigating said issues.  Discussions regarding RPMS began, in earnest, at the regularly scheduled Board Meeting on March 17, 2020, during which the School Board authorized Dr. Hines to conduct a needs

assessment of each site and determine financial possibilities therefore.[12]  Dr. Hines utilized an architectural firm out of Jackson, MS to do so.

By June 3, 2020, at a public work session, the LCSD School Board (hereinafter "School Board") was presented with a wide-range of significant life-safety issues found during said needs assessment at RPMS by the architectural/engineering firm (see Exhibit "A").  At the same hearing, the architectural/engineering firm presented the School Board with multiple options from which to choose.  Further, at the same meeting, the LCSD's bond attorney apprised the School Board of the District's funding options, which included several different taxation routes.  Said projects, estimates, bond capacity, and tax information, as was presented at the June 2020 meeting, are attached hereto as Exhibit "C", incorporated herein by reference, and labelled Bates #: 000039-000048.  All of this information was forwarded to DOJ and Plaintiff-Intervenors' counsel soon thereafter.

On March 16, 2021, after the LCSD's bi-racial committee unanimously chose the herein proposed project, whose recommendation was thereafter adopted by the School Board, the LCSD, through undersigned counsel, sent a formal request (via email) to counsel for the United States (DOJ) and counsel for the Plaintiff-Intervenors formally requesting a review and approval of the herein proposed consolidation plan.  A copy of the formal letter and the therein included exhibits are attached hereto as Exhibit "D", incorporated herein by reference, and are labelled as Bates ##: 000049-000056.

On July 2, 2021, the Department of Justice (hereinafter "DOJ") issued a letter stating, "[b]ased on our review of all the information the District has produced to date, the United States

---

[12] See Exhibit "G"-- School Board Meeting Minutes. Lawrence County School Board Meeting Minutes, March 17, 2020, p. 2, ¶6(D) (Bates #: 000062-000065).

does not object to the District's proposed consolidation plan.  A copy of DOJ's letter is attached hereto as Exhibit "E", incorporated herein by reference, and is labelled Bates #: 000057-000058.

On August 4, 2021, the LCSD, through undersigned counsel, sent a second request (via email) to Plaintiff-Intervenor's counsel for the Plaintiff-Intervenor's official position on the herein proposed consolidation plan.  A copy of this August 4, 2021, letter is attached hereto as Exhibit "F", incorporated herein by reference, and labelled Bates #: 000059-000061.

On August 17, 2021, several Plaintiff-Intervenor's their counsel and counsel for the United States met with the members of the LCSD School Board and the District's undersigned counsel during Executive Session at the School Board's regularly monthly meeting.   During the roughly one (1) hour meeting, Plaintiff-Intervenor's presented the School Board, for the first time, with a building construction plan of their own and, otherwise, opposed the herein proposed consolidation plan.  Notably, the Plaintiff-Intervenors' opposition to the instant consolidation proposal, as presented at the August 17, 2021 School Board meeting, are not based on any cited violation of the Constitution, federal law, or the herein applicable federal consent decrees and are, simply, a general opposition to the proposed consolidation plan based on preference.  The Plaintiff-Intervenors' alternative proposal is attached hereto as Exhibit "I", incorporated herein by reference, and labelled Bates #: 000087-000090.

### III.     LEGAL ARGUMENT

#### a.  Authorities on Motion to Modify Desegregation Plan and to Grant Expedited Consideration of Consolidation of Cited Schools

Where [...] there has been a finding of *de jure* segregation, a court "must exercise its broad equitable power to review and modify proposed remedies which are intended to create and maintain a unitary school system." *Flax v. Potts*, 567 F. Supp. 859, 861 (N.D. Tex. 1983).

In considering whether to implement a proposed change to a desegregation plan, a

court:

> "[M]ust decide only whether the choice violates the Constitution or federal law. To make that determination, federal courts ask only whether the proposed modification fails to further desegregation or places an inequitable transportation burden on black students. So long as neither answer is in the affirmative, we must defer to the expertise of school boards in decisions of this nature."

> *Cowan v. Bolivar Cnty. Bd. Of Educ.,* 2017 U.S. Dist. LEXIS 31316 *6-*7 (N.D. Miss. 2017) (quoting *United States v. Mississippi (Choctaw Cty. Sch. Dist.)*, 941 F.Supp.2d 708, 714-15 (N.D. Miss. 2013)(quoting *Anderson ex rel. Anderson v. Canton Mun. Separate Sch. Dist.*, 232 F.3d 450, 454 (5th Cir. 2000) (internal alterations omitted).

In evaluating whether a plan furthers desegregation, a court should consider the six factors set forth in *Green v. County School Board*, 391 U.S. 430, 435, 88 S. Ct. 1689, 20 L. Ed. 2d 716 (1968). These factors are student assignment, faculty, staff, transportation, extracurricular activities, and facilities. *Anderson v. Sch. Bd. of Madison Cty.*, 517 F.3d 292, 298 (5th Cir. 2008). Additionally, a court must consider whether the proposed plan is feasible. *Cowan v. United States*, 748 F.3d 233, 238, 240 (5th Cir. 2014).

The court approved site selection factors required to be considered are:

> "[Study] each location with an eye to (1) centrality, (2) maintenance of racial balance, (3) racially balanced decrease in overall student transportation mileage, (4) ease of access and availability of transportation arteries, (5) accessibility of utilities, and (6) size and shape compatible with planned construction, future expansion, and community growth."

> *United States v. Lawrence County School Dist.,* 606 F. Supp. 820, 822 (S.D. Miss. 1984) (quoting *Copeland v. Lincoln Parish School Board*, 598 F. 2d 977, 981 (5th Cir. 1979)(*citing Davis v. Board of Commissioners of Mobile County,* 483 F. 2d 1017 (5th Cir. 1973).

In *Swann v. Charlotte-Mecklenburg Bd. of Educ.,* 402 U.S. 1, **10-11 (1971), the Supreme Court stressed that,

> "(t)he construction of new schools and the closing of old ones are two of the most important functions of local school authorities and also two of the most complex.  They must decide questions of location and capacity in light of

population growth, finances, land values, site availability, through and almost endless list of factors to be considered.  The result of this will be a decision which, when combined with one technique or another of student assignment, will determine the racial composition of the student body in each school in the system.  Over the long run, the consequences of the choices will be far reaching . . . The location of the schools may . . . influence the patterns of residential development . . . (I)t is the responsibility of local authorities and district courts to see to it that future school construction and abandonment are not used and do not serve to perpetrate or reestablish the dual system."

*Copeland v. Lincoln Parish School Board*, 598 F. 2d 977, 981 (5th Cir. 1979) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.,* 402 U.S. 1, **10-11 (1971).

Guidance for the development of goal and criteria for site selection is found in

*Davis v. Board of School Comm'rs*, 483, F. 2d 1017, 1019 (5th Cir. 1973).

In selecting the herein proposed RPMS-MES consolidation project (hereinafter "MAC project"), adhering to the Fifth Circuit's August 7, 1970, Order, the LCSD's bi-racial committee, developed, adopted, and recommended to the School Board for adoption, a project goal and criteria for the herein site selection.  The School Board subsequently adopted said goals and criteria.  The LCSD's project goals and criteria are attached hereto as Exhibit "J", incorporated herein by reference, and labelled Bates #: 000091.  The minutes of the meeting wherein the School Board adopted the RPMS Goal and Criteria are attached hereto as Exhibit "K", incorporated herein by reference, and labelled Bates #: 000092-000099 (specific page for minute citation is Bates #: 000095).

    b. <u>**The LCSD's proposal selection process adheres to consent decree mandate and case law guidance and, therefore, this Court must defer to the expertise of the School Board on this matter as those decisions relate to any other ancillary issues.**</u>

       i. **The LCSD was presented with eight (8) different proposals for RPMS and further advised of the district's/county's bond availability.**

On June 3, 2020, at a public work session, representatives from JBHM Architectural Firm

in Jackson, MS, presented the School Board with eight (8) different options of dealing with the RPMS issue and the district's bond attorney advised of the district's bond availability.  See Exhibit "C."

To summarize Exhibit "C," the eight (8) proposals ranged from approximately $5 million to over $21 million in estimated costs.  The LCSD's bond debt limit is $20,652,323. Exhibit "C" at Bates #: 000040.  The estimated cost to completely rebuild RPMS brand new is projected at $21 million.  Exhibit "C" at Bates #: 000039.  The projected cost of completely re-built RPMS is clearly more than the LCSD can afford, thereby removing this option from consideration. It should be noted that the value of one (1) tax mill in Lawrence County is approximately $116,000.  Exhibit "C" at Bates #: 000040.  The value of one (1) mill has dropped, continuously, over many years and is projected to continue dropping further at our current trajectory.

The MAC project proposal was adjusted from the original layout due to public input regarding building and fire code concerns, and other similar matters.  Said adjusted layout is attached hereto as Exhibit "L", incorporated herein by reference, and labelled Bates #: 000100-000101.

On March 16, 2021, the LCSD, through undersigned counsel, sent a formal request (via email) to counsels for DOJ and counsel for the Plaintiff-Intervenor's formally requesting a review and approval of the herein proposed consolidation plan.  See Exhibit "D".

On July 2, 2021, DOJ issued a letter stating, "[b]ased on our review of all the information the District has produced to date, the United States does not object to the District's proposed consolidation plan."  See Exhibit "E".

On August 4, 2021, the LCSD, through undersigned counsel, sent a second request (via email) to Plaintiff-Intervenor's counsel for the Plaintiff-Intervenor's official position on the herein proposed consolidation plan.  See Exhibit "F".

On August 17, 2021, several Plaintiff-Intervenor's, their counsel, and DOJ counsel met with the members of the LCSD School Board and the District's undersigned counsel during Executive Session at the School Board's regularly monthly meeting.   During the roughly one (1) hour meeting, Plaintiff-Intervenor's presented the School Board, for the first time, with a building construction plan of their own and, otherwise, opposed the herein proposed consolidation plan. See Exhibit "I".

To restate: the Plaintiff-Intervenors' opposition to the instant consolidation proposal, as presented at the August 17, 2021, School Board meeting, were not based on any cited violation of, or offense to, the LCSD's federal desegregation consent decrees and are, simply, a general opposition to the proposed consolidation plan based on preference.  There is nothing about the MAC project proposal that is being used and/or serves to perpetrate or reestablish the previous dual system.

### ii.    Prior to selecting a specific option, the LCSD adopted a Project Goal and Criteria as proposed by the LCSD's Bi-racial committee

On November 12, 2020, the LCSD's Bi-Racial Committee voted 7-0 (at that time there were only nine (9) members and two (2) were absent) to adopt the Goal and Criteria for the RPMS project.  The information provided to the Bi-Racial committee was the same information, including the presentation, the School Board received at the previous day's Board work session. See Exhibit "C".

On November 17, 2020, at their regularly scheduled monthly meeting, the School Board adopted the Rod Paige Middle School Project Goal and Criteria, as recommended by the Bi-Racial

Committee, with no changes (the November 2020 meeting minutes were approved at the December 15, 2020 regularly scheduled meeting).  See Exhibits "J" and "K".

### iii.    Additionally, the LCSD held multiple public meetings both before, and after, the MAC project proposal was selected

Prior to the LCSD selecting the herein proposed MAC project proposal, the LCSD held multiple open meetings FOR public input, including School Board work sessions, special Board Meetings, and Regular Board meetings.  After the MAC project proposal was selected by the LCSD, in addition to regular board meetings at which the public could speak on ANY topic, there have been multiple Bi-Racial Committee meetings (which are also open to the public), and five (5) community meetings—one (1) in each of the five (5) supervisor districts from which school board members are elected—specifically on the topic of the MAC project proposal. Correspondence dated June 26, 2021, emailed to DOJ and Plaintiff-Intervenor's counsel, regarding the LCSD's steps to receive and include the community's input on this matter extensively detailed the LCSD's efforts on this matter.  See Exhibit "H".

Prior to the August 17, 2021, School Board meeting at which the Plaintiff-Intervenor's opposed the MAC project proposal by submitting a different proposal (attached as Exhibit "I"), individually, and specifically to Plaintiff-Intervenors Revs. Eugene Bryant and Rev. Amos Bridges, opposition to the MAC proposal was, initially, general in nature and, much of their opposition was with the architectural firm the LCSD utilized for the proposed project proposals and cost estimates.

Revs. Bryant and Bridges, throughout many of the herein discusses meetings, advocated for a county-wide referendum to ascertain whether, among other things, a bond would pass commensurate with what is needed to build a brand-new RPMS facility on the current RPMS site.  Also, throughout the last year and a half or so (additionally to what appears to be the

Plaintiff-Intervenors' official opposition and counter-proposal, as submitted at the August 17, 2021, School Board meeting), at multiple meetings in which they have attended, Revs. Bryant and Bridges have advocated for, 1) A brand-new consolidated K-12 facility and  2) A brand-new consolidated K-8 facility on the campus of Lawrence County High School (hereinafter "LCHS).

Neither of the above two (2) options are financially feasible even if a referendum could be held, and were successful, as the county's bond capacity does not come close to what would be needed for either option.

Among the scattered public opposition to the MAC proposal included the alleged specter of a brand-new facility/ wing being built alongside the 30-plus year old MES facility (MES opened around 1988).  Until the August 17, 2021, school board meeting, the community's prevailing counter-proposal idea seemed to coalesce around a K-8 consolidation idea which, per the proponents' suggestions, would be built on the LCHS campus.[13] Notably, LCHS opened its doors in 1962.

### iv. The District's Bi-Racial committee unanimously selected the MAC proposal and recommended the same to the School Board which subsequently adopted the recommendation

On February 4, 2021, applying the adopted Goal and Criteria, the LCSD's Bi-Racial Committee unanimously (by a vote of 10-0) recommended to the School Board to move forward with the MAC project proposal.

On February 23, 2021, at their regularly scheduled meeting, the School Board voted to accept the Bi-Racial committee's recommendation of the Rod Paige-MES consolidation and

---

[13]     The LCSD noted the community's (pre-August 17, 2021 school board meeting) shift to a consolidated K-8 facility position, subject to be built on the LCHS campus, in a correspondence to DOJ and Plaintiff-Intervenor's counsel on June 26, 2021, attached hereto as Exhibit "H", incorporated herein by reference, Bates #: 000066-000086.  The same letter addresses the proposals, their costs, and the problems with said proposals at length.

further voted to request a DOJ/ Plaintiff-Intervenor and Court review and approval prior to taking any further substantive steps.

While DOJ and Plaintiff-Intervenors had notice of RPMS option discussions since, at least, September 2020, including a copy of all eight (8) proposals, the bond capacity and financing options, and substantial updates as to every step of the LCSD's selection process, as outlined herein, the LCSD formally requested a DOJ and Plaintiff-Intervenor review and response to the MAC proposal on or about March 16, 2021 via email correspondence.  See Exhibit "D."

### c. Proposed modification furthers desegregation and does not place an inequitable transportation burden on black students

#### i. The LCSD proposes to consolidate RPMS with Monticello Elementary School at the current Monticello Elementary School site

Upon investigating the segregative impact of all the proposals which were also feasible, and by applying the adopted RPMS project Goal and Criteria, based on a totality of facts and considerations, the LCSD determined the MAC project proposal does not violate the Constitution or federal law and is, therefore, in the best interests of the entire Lawrence County community.

The MAC project proposal option includes, 1) Moving all students at RPMS to MES, making the MES campus a K-8 campus (currently, it is a K-4 campus), 2) An additional classroom wing and several other modifications/ adjustments/ additions will be needed as well, included but not limited to, a refurbishment of what is currently the Physical Education building to convert it to a band hall and an expansion of the cafeteria to accommodate the additional student load, and expansion of the library, 3) Further, what is informally known as the "old gym" at LCHS will be updated so as to accommodate sports-related needs for the middle school kids, and 4) RPMS will

be completely abandoned and sold.  An updated schematic of the MAC project proposal is attached hereto as Exhibit "L."

The estimated cost for this project is $5.2 million dollars.  Said funding will come primarily from an increase in local property taxes and other local funding sources, although there is a possibility of the availability of state and/or federal funding sources to further assist with the financial requirements of this project.  Approximately three (3) additional mills of property taxes are required to raise $5.2 million in property taxes in Lawrence County.  For a typical family with a $100,000 house and two (2) vehicles, presuming both vehicles' combined valued is $50,000, the resulting increase in property taxes is projected to be approximately $52.50 per year or $787.50 over the fifteen (15) year life of the millage increase.

The MAC project proposal does not contemplate any changes to the currently constituted attendance zones and, thus, will only impact students in what is known as the Monticello attendance zone. As an additional note, the architectural renderings for the project account for a student population of 750 (approximately 100 students more than the current overall student population of RPMS and MES).

The teacher and staff numbers and ratios for the MAC project proposal will be substantially the same upon this project being realized.

Further, RPMS and MES are approximately a mile and a half (1 ½) apart in distance. There are no anticipated changes to the LCSD's normal operating procedures, including, but not limited to, no anticipated changes to bus routes.

Notably, in its January 10, 1986, Memorandum Opinion, as to the question of the current MES site, this Court held, "Although the nearby church and residences are white, because of the sparse population, it cannot be said that the area is racially identifiable or more easily accessible

to students of one race.  Additionally, Monticello Elementary School […] would continue to serve the same attendance area; accordingly, the school is not intended to be a one-race school. […] The court is of the opinion that the site chosen, for the reasons stated above, will not be a factor tending to resegregate the Lawrence County schools.  **Furthermore, because the new facility will replace a building which was, prior to 1969, a white school, it will serve to promote the desegregative purpose in providing a facility which has no ties to a particular race**.”  *United States v. Lawrence County Sch. Dist.,* 626 F. Supp. 940, 946 (S.D. Miss. 1986).[14] (**EMPHASIS MINE).**

Similarly, the MAC project proposal will replace a building (RPMS) which was, prior to 1969, a black school, and will serve to further promote the desegregative purpose in providing a facility which has no ties to a particular race.  Notably, the current MES building was built in the late 1980s and, as such, also has no ties to a particular race but, instead, has been a desegregated school throughout the entirety of its history.

Since 1986 while remaining substantially white, the neighborhood has become more racially diverse, a state highway was re-routed such that it abuts the MES site on the west side of the property (approximately 1,500 feet or so from the school itself) thereby making the property directly accessible without driving through said neighborhood, and the cited white church was destroyed by Hurricane Katrina in 2005 (never rebuilt).  Every other facet of the hereinabove cited 1986 opinion remains substantially the same.

Upon consolidation, the total student population at the MAC project proposal campus, based on the January 7, 2021 student population numbers, will be 658 (305 white [46.3%], 329 black [50%], and 24 other [.03%].  In total the combined resulting white demographic percentage will increase just slightly by 1.2% over the current RPMS numbers and by 1.3% over the current

---

[14] *Affirmed In Part, Reversed In Part and Remanded,* September 15, 1986

MES numbers. The combined resulting black demographic percentage will increase slightly by 2.2% over the current RPMS numbers and by 2.1% over the current MES numbers.  January 2021 student demographic information for RPMS and MES, which was used in the formal review request, are attached hereto as Exhibit "M", incorporated herein by reference, and labelled Bates #:000102-000103.  However, updated September 2021 student demographics for RPMS and MES, which are substantially the same the January numbers, are also attached hereto as Exhibit "N", incorporated herein by reference, and labelled Bates #: 000104-000105.

Upon this Court's approval of the plan, the MAC project proposal construction timeline is approximately two (2) years.

The herein proposed MAC project proposal is not violative of any of the *Green* factors and otherwise furthers desegregation of the LCSD as is required.

### ii.      MAC proposal does not place an inequitable transportation burden on black students

While, as already mentioned, the MAC project proposal site is at the current MES location which passed this Court's (and the Fifth Circuit's) scrutiny in 1986, and while there will be no changes to the current transportation routes nor the attendance zones as a result of the MAC project proposal, nevertheless, the LCSD affirmatively found the MAC project proposal does not place any additional inequitable transportation burdens on black students (or any other minorities or anyone, period).

As mentioned MES is located approximately one and one half (1 ½) miles from RPMS. Both MES and RPMS are located in Monticello, which is located in the geographic center (more or less) of Lawrence County.   A student population map showing LCSD student residence locations by race relative to the attendance zones (and to the Town of Monticello) is attached hereto as Exhibit "O", incorporated herein by reference, and labelled Bates #: 000106.  A student

population map per Census Block and the corresponding student data for said Census Block map are attached hereto as Exhibit "P" and "Q", incorporated herein by reference, and labelled Bates #: 000107 and Bates #: 000108-000128.

Very clearly the MAC proposal does not place an inequitable transportation burden on black students.

## CONCLUSION

From the outset, the LCSD has done its due diligence, and in good faith, to ensure the MAC project proposal meets the LCSD's obligations to eradicate the vestiges of the previous dual-system and has developed the herein MAC project proposal in such a manner that all children within the District have access to adequate educational facilities, within our county's financial means, and in a manner that meets Constitutional and federal law scrutiny.

Therefore, this Court should grant the LCSD's request to expeditiously grant oral arguments and, otherwise, approve its proposed modification to the August 12, 1987, Order of this Court amending the LCSD's previous school location plan and student attendance areas such that the LCSD may construct additional facilities at the current MES location wherein the MES-

RPMS schools may be consolidated, with all current students who attend RPMS thenceforth attending school at the current MES campus and to grant any and all other relief the Court deems necessary.

       **RESPECTFULLY SUBMITTED,** this _____ day of _____, 2021.

                                    **LAWRENCE COUNTY SCHOOL DISTRICT**

                                    BY:  /s/ JARED F. EVANS_____
                                        JARED F. EVANS, ESQ.

JARED F. EVANS, MB# 105809
JARED F. EVANS LAW, PLLC
GENERAL COUNSEL FOR THE LAWRENCE COUNTY SCHOOL DISTRICT
POST OFFICE BOX 1636
318 E. BROAD STREET, FL. 2
MONTICELLO, MS 39654
601-320-4606
601-300-2953 (FAX)
EMAIL: jaredfrankevans@jaredfevanslaw.com

## CERTIFICATE OF SERVICE

I, JARED F. EVANS, do hereby certify that I have this day electronically filed the

foregoing Memorandum in Support of Motion to Modify Desegregation Plan, et. al., by

electronic service through PACER and that an electronic copy of said filing has been sent to the

following via <u>email only:</u>


Peter W. Beauchamp
Trial Attorney
Educational Opportunities Section, Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW – 4CON
Washington, DC 20530
Tel: (202) 305-3058  |  Fax: (202) 514-8337
<u>peter.beauchamp@usdoj.gov</u>
Counsel for the United States of America

Jonathan Newton | Trial Attorney
Civil Rights Division | Educational Opportunities Section
U.S. Department of Justice | 4CON | 150 M St. NE, 10.216 |
Washington, DC 20530 | Office: (202) 307-6475
Counsel for the United States of America


Shakti Belway, Esq.
P. O. Box 2040
Santa Barbara, CA 93120
Email: <u>shakti.belway@gmail.com</u>
Counsel for Plaintiff-Intervenors

THIS the **10th** day of September, 2021.

<u>/s/ JARED F. EVANS</u>
JARED F. EVANS